FORM 12. Informal Opening Brief (District Court, Court of International Trade, and Court of Federal Claims)

Form 12 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### INFORMAL BRIEF OF APPELLANT

**RECEIVED**

MAY 0 2 2023

United States Court of Appeals
For the Federal Circuit

**Case Number:** 23-1818

**Short Case Caption:** Golden v. Qualcomm Inc.

**Name of Appellant:** Larry Golden

---

**Instructions:** Read the Guide for Unrepresented Parties before completing this form. Answer the questions as best as you can. Attach additional pages as needed to answer the questions. This form and continuation pages may not exceed 30 pages.

Attach a copy of the trial court's opinion, order, and/or judgment. You may also attach other record material as an appendix. Any attached material should be referenced in answer to the below questions. Please redact (erase, cover, or otherwise make unreadable) social security numbers or comparable private personal identifiers that appear in any attachments you submit.

---

1. Have you ever had another case before this court? ☑ Yes ☐ No
   If yes, state the name and number of each case.

   > Larry Golden v. Google LLC CAFC 22-1267
   > Larry Golden v. Apple Inc. [pending] CAFC 23-1161
   > Larry Golden v. Intel Corporation [pending] CAFC 23-1257

2. Did the trial court incorrectly decide or fail to take into account any facts?
   ☑ Yes ☐ No
   If yes, what facts?

   > After 14 yrs of Qualcomm hiding under the Gov't to infringe Plaintiff's patents; after 12 yrs of ignoring a cease & desist and an offer to license; after failure to appear in COFC; after failure to defend in SCDC; and after the the Fed. Cir. in Golden v. Google LLC CAFC 22-1267, ruleded Qualcomm's joint infringement (in Complaint) was not "facially frivolous", Qualcomm is still unjustly enriching itself by collecting 5% royalties on the price of each handset (cell phone; smartphone) sold without a patent, authorization, or legal right to collect on Plaintiff's patented phones.

3.  Did the trial court apply the wrong law?  ☑ Yes      ☐ No

If yes, what law should be applied?

> A claim is frivolous when the claim lacks any arguable basis either in law or in fact Neitze v. Williams, 490 U.S. 319, 325 (1989). This case is neither idiculous, absurd, ludicrous or nonsensical. A complaint may not be dismissed under Rule12(b)(6) unless it"appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."Allen v. West Point-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true ... and must draw all reasonable inferences in favor of the plaintiff. Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.)"[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995)

4.  Did the trial court fail to consider important grounds for relief?

☑ Yes      ☐ No

If yes, what grounds?

> Joint infringement with Google, Samsung, LG, & Asus. Direct infringement under 35 U.S.C. § 271(a) of the asserted claims of Plaintiff's '189, '439, '287, and '619 Patents (Asus/Qualcomm Smartphone). Induced and Contributory infringement under 35 U.S.C. § 271(b) & (c) [Qualcomm's Snapdragon chipsets]. Illegal "Tying" arrangement (Anticompetitive violation). Illegal collection of "royalties" on the price of handsets that's patented by Plaintiff, without license or authorization to do so (Antitrust violation-Qualcomm's competition cannot rightfully do the same; and the antitrust injury is to Plaintiff who owns the patents rights for handsets). Willful intent under Clayton Act 4 and willful infringement; after being given notice in 2010.

5.  Are there other reasons why the trial court's decision was wrong?

☑ Yes      ☐ No

If yes, what reasons?

> A court engages in vertical stare decisis when it applies precedent from a higher court. For example, if the Northern District of California Court in this case adhered to the previous ruling from the U.S. Court of Appeals in Golden v. Google LLC on frivolousness and the Court of Appeals standard for review that Plaintiff have pled "enough fact[s] to raise a reasonable expectation that discovery will reveal that the defendant is liable for the misconduct alleged", that would be vertical stare decisis. For infringement analysis & litigation, the claim charts in this case that "mirrors" the claim charts in Golden v. Google help confirm that each and every limitation of the claims are present in the accused products.

**FORM 12.  Informal Opening Brief (District Court, Court of International Trade, and Court of Federal Claims)**                                         **Form 12 (p. 3)**
**July 2020**

6.  What action do you want this court to take in this case?

> Reverse and Remand this case back to the District Court with instructions that the Court proceed directly to a trial by jury with the pleadings already submitted and this Court's favorable determination, or proceed directly into settlement proceedings with instructions that some form of settlement is agreed upon by the parties. And also, if Qualcomm don't agree to finalize settlement within 30 days, Plaintiff's motion for injunctive relief is granted and goes into effect on the first day after the failed settlement between the parties. Plaintiff inventions are designed to save lives, prevent terrorism, and stimulate the American economy. Qualcomm stole that from Plaintiff. Plaintiff invites the Circuit to determine an award damages to Plaintiff. Qualcomm had multiple years and multiple opportunities to present patents that antedate Plaintiff's patents or a license that authorizes the collection of royalties on my inventions.

Date: 04/28/2023

Signature:

Name: Larry Golden

# THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S CASE AS "FRIVOLOUS"

A claim is frivolous when the claim lacks any arguable basis either in law or in fact *Neitze v. Williams*, 490 U.S. 319, 325 (1989). Ridiculous, absurd, ludicrous, and nonsensical— these are all words that can be used to describe a frivolous lawsuit.

A complaint may not be dismissed under Rule 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 117 (1994). The review of such a motion is limited, and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235-36 (1974)).

Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (citing *Scheuer*, supra, 416 U.S. at 236). All Plaintiff's cases concern motions to dismiss. Such motions do not resolve whether Plaintiff will ultimately prevail, but simply whether the complaint was sufficient to cross the Court's pleading threshold. In *Intel Corp. v. Future Link Sys., LLC*

## The Trial Court's Reliance on *Golden v. US* COFC 13-307C is Flawed and Prejudicial

The Trial Court will have us to believe Plaintiff's *Golden v. US* COFC 13-307C was dismissed against Qualcomm because Plaintiff's claims were frivolous "the Court of Claims dismissed Plaintiff's case against the United States government, in which he alleged that the government "caused cell phone manufacturers," including Qualcomm, "to produce devices that infringe on one or more of his patents." *Golden v. United States*, 156 Fed. Cl. 623, 625 (2021)."

First, Qualcomm wasn't just named as a third-party contractor in the DHS S&T Cell-All project, Qualcomm was the prime contractor "DHS S&T secured Cooperative Research and Development Agreements with four primary cell phone manufacturers—Qualcomm, LG, Apple, and Samsung—with the objective of accelerating the 'commercialization of technology

4

developed for government purposes'" (U.S. Department of Homeland Security, 2010) … "the primary contractors working on the project are Synkera Technologies, Qualcomm, NC4, and NASA's Ames Research Center" (U.S. Department of Homeland Security, 2011).

The COFC sent Qualcomm a "Notice to Appear" in 2019. Qualcomm refused to appear to protect its interest in the Case. Qualcomm was empowered, as the prime contractor, to provide four (4) major components needed to develop the DHS's cell-phone sensing device.

Three of the four major components are the patented inventions of Plaintiff. Only one is patented by Qualcomm: (1) the new, improved upon, or useful cell phone (Plaintiff); (2) the CBRNE detectors/sensors developed for the new, improved upon, or useful cell phone (Plaintiff); (3) the central processing units (CPUs) developed for new, improved upon, and useful cell phone (Plaintiff); and, (1) the wireless cellular modem (Qualcomm).

Second, the COFC ordered Plaintiff to develop a preliminary infringement contentions chart on Apple, Samsung, and LG only. Qualcomm's involvement as the prime contractor was never adjudicated and Plaintiff's case was dismissed because (1) the new, improved upon, or useful cell phone was alleged to be the private property of Apple, Samsung, and LG. (2) the CBRNE detectors/sensors were not "native" to the manufacture of the Apple, Samsung, and LG products, (3) the CPUs, that are considered the "brains" of the cell phone sensing device, improperly enhanced the scope of the case and violated the Court's order not to amend [without the CPU—the cell phone sensing device has no utility]

Qualcomm, who developed Plaintiff's patented cell phone sensing device; for the government and with the "authorization and consent" of the government, was never considered in *Golden v. US,* and after Qualcomm failed to appear, the COFC Court dismissed Qualcomm.


**The Trial Court's Interpretation of Plaintiff's "Antitrust Injury" Claim is Flawed**

Plaintiff presented the district court's findings in *FTC. v. Qualcomm*, 411 F. Supp. 3d 658 (N.D. Cal. 2019) as *evidence* Qualcomm was unjustly enriching itself by collecting royalties of 5% on each handset (i.e., new, improved upon, or useful cell phone) sold. District Judge Lucy H. Koh concluded Qualcomm is being unjustly enriched from its anticompetitive practices: "Qualcomm stopped licensing rival modem chip suppliers and instead started licensing only OEMs (i.e., Samsung, Google, etc) at a *5% running royalty on the price of each handset sold.* These licenses are called Subscriber Unit License Agreements ("SULA") …"

"Specifically, Qualcomm charges a 5% running royalty on handset sales for a license to Qualcomm's CDMA patent portfolio. Qualcomm's 5% royalty rate on the price of each phone sold is a species of unfair competition. The Federal Trade Commission Act bans "unfair methods of competition" and "unfair or deceptive acts or practices."

This evidence was never disputed by Qualcomm and the evidence was never rejected at the Ninth Circuit. See id. ¶¶ 76-78; cf. *FTC v. Qualcomm Inc.*, 969 F.3d 974, 1001- 1002 (9th Cir. 2020) (finding no antitrust violation based on "no license, no chips"). Qualcomm's ""no license, no chips" policy is a separate issue that harms customers and Plaintiff, not competitors.

Qualcomm is being unjustly enriched for charging a 5% royalty rate per the price of the phone, i.e., Plaintiff's CMDC device; handset; smartphone, etc. Plaintiff has the right to exclude Qualcomm from "using" Plaintiff's CMDC devices—handsets to unjustly enrich itself. Plaintiff is entitled to stop Qualcomm's use of the Plaintiff's inventions to generate revenue (5% royalty on each handset sold) by seeking a legal injunction in Federal Court. Qualcomm's anticompetitive practices restrained Plaintiff from entering the market to collect royalties. The Trial Court further restrains Plaintiff from collecting damages. Plaintiff is entitled to collect damages from Qualcomm; based on lost profits Plaintiff suffered as a result of the antitrust injury.

The above-described antitrust injuries to Plaintiff are of a type that the antitrust laws were intended to prevent; and Plaintiff's injuries flows from that which makes the Defendant's acts unlawful. The only way this type of antitrust injury will cease is for Qualcomm to volunteer on their on to stop collecting royalties on Plaintiff's patented inventions, or Qualcomm convinces a jury Plaintiff's patents are invalid.

Therefore, granting Qualcomm's motion to dismiss is improper because "[I]n reviewing a Rule 12(b)(6) motion, [the Trial] Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.)

Also, the ***evidence*** show Qualcomm collects royalties on the price of each handset sold, and Plaintiff's patents show the handsets are the patented inventions of Plaintiff. "A complaint may not be dismissed under Rule 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**The Trial Court's Interpretation of Plaintiff's "Induced Infringement" Claim is Flawed**

Plaintiff presented the district court's findings in *FTC. v. Qualcomm*, 411 F. Supp. 3d 658 (N.D. Cal. 2019) as *evidence* Qualcomm actively induced the infringement of Plaintiff's patents by "tying" Plaintiff's CPUs to its cellular modems and offering the combination to its customers as Snapdragon Chipsets; actively inducing its customers under the threat of "no license, no chip" agreement; and include published manuals and specifications found over the world wide web.

This evidence was never disputed by Qualcomm and the evidence was never rejected at the Ninth Circuit. See id. ¶¶ 76-78; cf. *FTC v. Qualcomm Inc.*, 969 F.3d 974, 1001- 1002 (9th Cir. 2020) (finding no antitrust violation based on "no license, no chips" … policy "involve[d] potential harms to Qualcomm's *customers*, not its competitors, and thus falls outside the relevant antitrust markets"). The "tied" and "tying" products formed the chipset sold to "*customers*".

Upon information taken from the *FTC. v. Qualcomm* case, Qualcomm's "no license, no chips" cause harm to Qualcomm's customers. Plaintiff alleged it was Qualcomm's customers who is harmed by "tying" Plaintiff's CPUs to Qualcomm's cellular modems and Qualcomm offering the combination through advertisements to Qualcomm's customers as Snapdragon Chipsets; actively induced its customers under the threat of "no license, no chip" agreement.

Plaintiff reference Qualcomm's knowledge of Plaintiff's patents and intellectual property subject matter at ¶¶ 44-51, 55, 60, 69-70, & 90 of the original Complaint (Dkt. 1). Qualcomm has actively induced infringement of Plaintiff's '189, '439, '287, and '619 patent claims by selling the Snapdragon chipsets to one or more customers in the U.S., along with documents and instructions demonstrating how to use the devices/chipsets to infringe the claims.

The "tying" arrangement is of a type of "*private*" injury that the antitrust laws were intended to prevent; and Plaintiff's injuries flows from that which makes Qualcomm's acts unlawful. Also, Qualcomm is in violation of 35 U.S.C. Section 271(b); induced infringement.

The only way this type of "*private*" antitrust injury and induced infringement will cease is for Qualcomm to volunteer on their on to stop using Plaintiff's patented inventions, or Qualcomm convinces a jury Plaintiff's patents are invalid.

Therefore, granting Qualcomm's motion to dismiss is improper because "[I]n reviewing a Rule 12(b)(6) motion, [the Trial] Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.)

**The Trial Court's Interpretation of Plaintiff's Contributory Infringement Claim is Flawed**

Plaintiff describes how Qualcomm's Snapdragon Chipsets are comparably the same as Plaintiff's patented CPU-processors made for Plaintiff's CMDC devices (i.e., Asus/Qualcomm Smartphones for Snapdragon Insiders) and are a "material part" of Plaintiff's invention, and Qualcomm's Snapdragon Chipsets has "substantial non-infringing use".

Relevant to this current case, the features of Qualcomm Snapdragon chipsets, that are used with Plaintiff's CMDC devices (i.e., Asus/Qualcomm Smartphones for Snapdragon Insiders) practices a material part of the claims of Plaintiff's '189, '439, '287, and '619 Patents— i.e., the CPU (Snapdragon chipset) is considered the "brains" of the smartphone/handset and is capable of carrying out the functional and operational instructions of the smartphone/handset.

35 U.S. Code § 271 - Infringement of patent (c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer.

Qualcomm had actual knowledge, or was willfully blind, that the "Snapdragon chipsets" feature of the CMDC device was especially made or adapted for use in a manner that infringes the asserted claims of Plaintiff's '189, '439, '287, and '619 Patents.

Qualcomm knew, or was willfully blind, that the "Snapdragon chipsets (CPU)" products are configured to infringe Plaintiff's '189, '439, '287, and '619 Patents upon normal use. Despite that knowledge (or willful blindness), Qualcomm actively sold the "Snapdragon chipsets (CPU)" products to its customers in the United States, knowing (or being willfully blind) that such use would constitute contributory infringement in violation of 35 U.S.C. § 271(c) of the asserted claims of Plaintiff's '189, '439, '287, and '619 Patents.

The Qualcomm "Snapdragon chipset" feature of the Asus/Qualcomm Smartphones for Snapdragon Insiders are not a staple article of commerce, and—as configured to perform the steps of the asserted claims — is not capable of substantial non-infringing use, as its only function is to perform the steps of the asserted claims.

8

For the reasons set forth above, use of the Snapdragon chipsets feature will always, during normal use, infringe the asserted claims of the Plaintiff's '189, '439, '287, and '619 Patents. See *Carolyn Hafeman v. LG Electronics Inc*. Case No. 6:21-cv-00696-ADA-DTG

Accordingly, Defendant has unlawfully contributed to the infringement of the asserted claims, in violation of 35 U.S.C. § 271(c), by selling the alleged infringing Asus/Qualcomm Smartphones for Snapdragon Insiders, whose "Snapdragon chipsets" are especially adapted to infringe the asserted claims of Plaintiff's patents.

Therefore, granting Qualcomm's motion to dismiss is improper because "[I]n reviewing a Rule 12(b)(6) motion, [the Trial] Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.)

### The Trial Court's Reliance on Qualcomm, Pre-*Larry Golden v. Google LLC* CAFC Case No. 22-1267 is Flawed

The Trial Court completely ignored the opinion of the Federal Circuit in *Golden v. Google, LLC*, 2021 WL 5890440 at *4 (D.S.C. Apr. 9, 2021) and decided to dismiss Plaintiff's case as "frivolous", "[t]his case was also dismissed with prejudice as frivolous, with the Magistrate Judge specifically noting that Plaintiff could not "circumvent prior rulings by this court that infringement allegations against Apple/Qualcomm are frivolous".

In the *Google* case Qualcomm is named as a "joint infringement" with Google and the Federal Circuit determined in the *Google* case that the complaint was not "facially frivolous", and "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product" … [w]e conclude that the district court's decision in the Google case [that includes Qualcomm] is not correct with respect to [] the three claims mapped out in the claim chart".

A court engages in vertical stare decisis when it applies precedent from a higher court. For example, if the Northern District of California Court in this case adhered to a previous ruling from the U.S. Court of Appeals for the Federal Circuit, that would be vertical stare decisis.

The Federal Circuit also described the pleading standard applied when reviewing the *Golden v. Google, LLC* case: Ignoring the Circuit's review procedures is a sign of disrespect.

Three-Judge Panel: "DISCUSSION. 'Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662

(2009), a court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 ... [T]his standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). A plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted) ... this court has explained that a plaintiff ... must plead "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

For infringement analysis & litigation, claim charts help confirm or dis-confirm that each and every limitation of the claim is present in a product, service, or standard. An Evidence-of-Use (EoU) or Infringement Chart shows how a product or process accused of infringement contains each claim element to satisfy the 'all elements test' for infringement and was prepared by the Plaintiff / Patent Owner.

Google, Apple, Samsung, LG, and Asus/Qualcomm smartphones are substantial the same for substantial the same infringing use [see the chart comparison pgs. 19-26 of this document]. The claim chart illustrates how Apple, Samsung, LG, and Asus/Qualcomm "mirrors' the claim chart Plaintiff submitted to the Federal Circuit in *Larry Golden v. Google LLC*. Therefore, if the claim chart for Google identifies how the elements of the Google Pixel 5 reads on the claim limitations of Plaintiff's asserted patents "in a straightforward way", then Apple, Samsung, LG, and Asus/Qualcomm likewise does the same, which determines "direct infringement".

At this stage, the one thing that is clear, Plaintiff has provided an abondance of evidence or "enough facts to raise a reasonable expectation that discovery will reveal' that the Defendant is liable for the misconduct alleged." Accordingly, Qualcomm has unlawfully infringed the asserted claims Plaintiff's '189, '439, '287, and '619 Patents, in violation of 35 U.S.C. § 271(a).

Therefore, granting Qualcomm's motion to dismiss is improper because "[I]n reviewing a Rule 12(b)(6) motion, [the Trial] Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.). Proving patent infringement in court requires Plaintiff to prove two broad elements: ownership and validity of the patent(s), and infringement of the patent by the Qualcomm.

## THE TRIAL COURT FAILED TO ADDRESS
## QUALCOMM'S ILLEGAL COLLECTION OF ROYALTIES

The Ninth Circuit in *FTC v. Qualcomm* never weighed in, or issued an opinion on whether or not it is okay for Qualcomm, or even legal for Qualcomm, or anyone, to collect royalties on Plaintiff's patented inventions (i.e., Plaintiff's CMDC devices; CPUs) without authorization or license to do so. Collecting royalties on Plaintiff's patented CPUs is illegal.

Likewise, the Trial Court deliberately and intentionally chose not to address whether or not it is okay, or even legal for Qualcomm, or anyone to collect royalties on Plaintiff's patented inventions (i.e., CMDC devices; CPUs) without authorization or license to do so.

Qualcomm's Baseband Processor (modem) is a mobile Semiconductor Device or chip in Asus/Qualcomm Smartphones for Snapdragon Insiders, smartwatches, tablets, or other mobile device (i.e., Plaintiff's CMDC devices) that convert digital data into radio frequency signals and manages all the radio functions.

A baseband processor (Qualcomm's Snapdragon Modems) allows devices to connect to wireless cellular networks. It is used in conjunction with a *Central Processing Unit or (CPU)* (i.e., Plaintiff's patented CPUs). Inside every cellular device is a component known as a cellular modem, which handles the actual communications with the cellular network. Below is an example of Qualcomm Snapdragon Gen 8 Deep Dive CPU Display:



Qualcomm Snapdragon Gen 8 Deep Dive CPU Display

| | Snapdragon 6 Gen 1 | Snapdragon 695 | Snapdragon 690 | Snapdragon 680 |
|---|---|---|---|---|
| **CPU** | 4x Cortex-A78<br>4x Cortex-A55 | 2x Kryo 660 (Cortex-A78)<br>6x Kryo 660 (Cortex-A55) | 2x Kryo 560 (Cortex-A77)<br>6x Kryo 560 (Cortex-A55) | 4x Kryo 260 (Cortex-A73)<br>4x Kryo 260 (Cortex-A53) |
| GPU | Adreno | Adreno 619 | Adreno 619L | Adreno 610 |
| RAM | LPDDR5 | LPDDR4X | LPDDR4X | LPDDR4X |
| DSP | Hexagon | Hexagon 686 | Hexagon 692<br>Hexagon Tensor Accelerator | Hexagon 686 |
| **Modem** [1] | X62 5G<br>2.9Gbps down<br>TBC up | X51 5G<br>2.5Gbps down<br>0.9Gbps up | X51 5G<br>2.5Gbps down<br>0.9Gbps up | X11 4G<br>390Mbps down<br>150Mbps up |
| Cameras | 48MP single<br>25MP+16MP dual<br>13MP+13MP+<br>13MP triple<br>200MP snapshot | 32MP single or<br>16MP dual<br>192MP snapshot | 32MP single or<br>16MP dual<br>192MP snapshot | 32MP single<br>16MP dual<br>13MP+13MP+<br>5MP triple<br>64MP snapshot |
| Quick Charge | 4+ | 4+ | 4+ | 3.0 |
| Bluetooth | 5.2 | 5.2 | 5.1 | 5.1 |
| Process | 4nm | 6nm | 8nm FinFET | 6nm |

---

[1]    Qualcomm's top-of-the-line Snapdragon 865 Mobile Platform chipset, that includes the Snapdragon X55 5G modem costs $120-$130.

The NDC District Court in *FTC v. Qualcomm* determined the Federal Circuit law regarding "the smallest salable patent-practicing unit ("SSPPU") in the cellular handset is the modem chip.

If Qualcomm disagrees with the proposition that the modem chip is the proper SSPPU, in lieu of collecting royalties on the handset; Qualcomm collects a royalty on the price of the Snapdragon chipset (illustrated above). Which means, after Qualcomm sells the Qualcomm Snapdragon chipset to the OEMs for $130 dollars; Qualcomm then collects a 5% royalty on the price of the Snapdragon chipset ($6.50).

It was never a legal option for Qualcomm to collect on the selling price of the patented handsets.

"Intelligent system-level integration of the digital baseband (modem), RF transceiver, and all key RF front-end components." "The CPU *processors* utilize a strong heritage in engineering to deliver best-in-class security, AI, and connectivity solutions" *Qualcomm* https://www.qualcomm.com/products/technology/processors#:



Snapdragon 888 Modem-RF System

**Plaintiff illustrates how Qualcomm is infringing Plaintiff's patented CMDC devices (i.e., smartphones) and how Qualcomm is "using" Plaintiff's patented CMDC devices (i.e., smartphones) without authorization or legal right to do so: 35 U.S.C. § 271(a)**

35 U.S. Code § 271 - Infringement of patent (a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

The Asus/Qualcomm Smartphone for Snapdragon Insiders Infringes Plaintiff's
'189, '439, '287, & '619 Patents [Claims Describes the Function of the CPU & Modem]

| Claim 1 of the '189 Patent | Claim 23 of the '439 Patent |
|---|---|
| 1.   A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising:<br><br>at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program …<br><br>at least one [] Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, [], or GPS connection; | 23.   A cell phone comprising:<br><br>a central processing unit (CPU) for executing and carrying out the instructions of a computer program; …<br><br>at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, … or GPS connection;<br><br>the cell phone is at least a [] communication device …capable of [] wireless communication … |
| Claim 5 of the '287 Patent | Claim 1 of the '619 Patent |
| 5.   A monitoring device, comprising:<br><br>at least one central processing unit (CPU); …<br><br>at least one global positioning system (GPS) connection in communication with the at least one CPU;<br><br>at least one of an internet connection or a Wi-Fi connection in communication with the at least one CPU;<br><br>at least one of a Bluetooth connection, a cellular connection, or a satellite connection in communication with the at least one CPU; | 1.   A communication device that is at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, comprising at least a central processing unit (CPU), capable of: …<br><br>processing instructions received through at least one of a Bluetooth, a Wi-Fi, a satellite, a global positioning system (GPS), or a cellular transmission; |

**Plaintiff illustrates how Qualcomm is "Tying" Plaintiff's patented CPU-Processors, to its Snapdragon chipsets and "using" Plaintiff's patented CPU-Processors to enrich itself without authorization or legal right to do so: 35 U.S.C. § 271(a)**

Qualcomm's Snapdragon Chipsets Infringes Claims 1 & 11 of
Plaintiff's '619 Patent [Claims Describes the Function of the CPU & Modem]

| Claim 1 of the '619 Patent | Claim 11 of the '619 Patent |
|---|---|
| 1.   A communication device that is at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, comprising at least a central processing unit (CPU), capable of: …<br><br>        processing instructions received through at least one of a Bluetooth, a Wi-Fi, a satellite, a global positioning system (GPS), or a cellular transmission;<br><br>        processing instructions to connect the communication device to the internet or internet-of-things (IoTs) platform …<br><br>        2.      The communication device of claim 1, comprising at least a central processing unit (CPU), capable of processing operational instructions for at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner.<br><br>        8.      The communication device of claim 1, comprising at least a central processing unit (CPU), capable of receiving a signal through at least a Bluetooth, a Wi-Fi, a satellite, a cellular, or GPS connection. | 11.     A central processing unit (CPU) of at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, capable of:<br><br>        processing instructions received through at least one of a Bluetooth, a Wi-Fi, a satellite, a global positioning system (GPS), or a cellular transmission;<br><br>        processing instructions to connect the communication device to the internet or internet-of-things (IoTs) platform<br><br>        12.     The central processing unit (CPU) of claim 11, capable of processing operational instructions for at least one of a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner.<br><br>        18.     The central processing unit (CPU) of claim 11, capable of processing operational instructions through at least a Bluetooth, a Wi-Fi, a satellite, a cellular, or GPS connection. |

**In the above charts, Plaintiff patent claims illustrates how Qualcomm's Snapdragon chipsets, that includes Plaintiff's patented CPU-Processors, are contributing to the infringement of Plaintiff's patented CMDC devices (i.e., Asus/Qualcomm Smartphones for Snapdragon Insiders) without authorization or legal right to do so: 35 U.S.C. § 271(c)**

35 U.S. Code § 271 - Infringement of patent (c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer.

**Plaintiff describes how Qualcomm's Snapdragon Chipsets are comparably the same as Plaintiff's patented CPU-processors made for Plaintiff's CMDC devices (i.e., Asus/Qualcomm Smartphones for Snapdragon Insiders); are a Material Part of Plaintiff's invention, and Qualcomm's Snapdragon Chipsets has no substantial non-infringing use.**

Relevant to this current case, the features of Qualcomm Snapdragon chipsets, that is used with Plaintiff's CMDC devices (i.e., Asus/Qualcomm Smartphones for Snapdragon Insiders) practices a material part of the claims of Plaintiff's '189, '439, '287, and '619 Patents—i.e., the CPU (Snapdragon chipset) is considered the "brains" of the smartphone/handset and is capable of carrying out the functional and operational instructions of the smartphone/handset.

Qualcomm had actual knowledge, or was willfully blind, that the "Snapdragon chipsets" feature of the CMDC device was especially made or adapted for use in a manner that infringes the asserted claims of the '189, '439, '287, and '619 Patents.

Qualcomm knew, or was willfully blind, that the "Snapdragon chipsets" products are configured to infringe Plaintiff's '189, '439, '287, and '619 Patents upon normal use. Despite that knowledge (or willful blindness), Qualcomm actively sold the "Snapdragon chipsets" products in the United States, knowing (or being willfully blind) that such use would constitute direct and contributory infringement of the asserted claims of Plaintiff's '189, '439, '287, and '619 Patents.

The Qualcomm "Snapdragon chipset" feature of the Asus/Qualcomm Smartphones for Snapdragon Insiders are not a staple article of commerce, and—as configured to perform the steps of the asserted claims — is not capable of substantial non-infringing use, as its only function is to perform the steps of the asserted claims.

16

For the reasons set forth above, use of the Snapdragon chipsets feature will always, during normal use, infringe the asserted claims of the Plaintiff's '189, '439, '287, and '619 Patents.

Accordingly, Defendant has unlawfully contributed to the infringement of the asserted claims, in violation of 35 U.S.C. § 271(c), by selling the alleged infringing Asus/Qualcomm Smartphones for Snapdragon Insiders, whose "Snapdragon chipsets" are especially adapted to infringe the asserted claims of Plaintiff's patents.

## FIGURES 1-5 CHARTS AND DIAGRAMS [BELOW]

➢ Fig. 1 (below): Google, Apple, Samsung, LG, and Asus/Qualcomm smartphones are substantial the same for substantial the same infringing use. Apple, Samsung, LG, and Asus/Qualcomm "mirrors' the claim chart Plaintiff submitted to the Federal Circuit in *Larry Golden v. Google LLC*. The following charts and diagrams describe in detail the elements of the CMDC devices and limitations of Plaintiff's patent claims.

> *The Federal Circuit on 09/08/2022, in Larry Golden v. Google LLC; Case No. 22-1267 "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 ... It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner ... "*

  o Fig. 1(a): Google, Samsung, & LG's smartphone CPUs (i.e., Qualcomm's Snapdragon) and Asus/Qualcomm smartphone CPUs are substantial the same for substantial the same infringing use.

  o Fig. 1(b): Google, Samsung, & LG's smartphone operating systems (i.e., Google Android) and Asus/Qualcomm smartphone operating systems (i.e., Google Android) are substantial the same for substantial the same infringing use.

  o Fig. 1(c): Google, Samsung, & LG's smartphone ATAK and Asus/Qualcomm's smartphone ATAK for CBRNE plug-ins are substantial the same for substantial the same infringing use.

➢ Fig. 2 (below): Google, Apple, Samsung, & LG's smartphone megapixel camera lens and Asus/Qualcomm's smartphone megapixel camera lens use for CBRNE detection are substantial the same for substantial the same infringing use.

➢ Fig. 3 (below): Google, Apple, Samsung, & LG's smartphone nanotechnology camera for Chem/Bio detection and Asus/Qualcomm's smartphone nanotechnology camera for Chem/Bio detection are substantial the same for substantial the same infringing use.

➢ Fig. 4 (below): Google, Apple, Samsung, & LG's smartphone "built-in" Biosensors and Asus/Qualcomm's smartphone "built-in" Biosensors are substantial the same for substantial the same infringing use.

The Federal Circuit held that the *Iqbal/Twombly* pleading standard does not necessarily require a Plaintiff to allege infringement with an element-by-element analysis. The Court found that the district court simply required too much and that *Bot M8* need not prove its case at the pleading stage. Instead, the relevant inquiry under *Iqbal/Twombly* is whether the factual allegations in the complaint are sufficient to show that the Plaintiff has a plausible claim for relief. Given the context-specific nature of such an inquiry, the level of detail necessary for a pleading varies depending on the complexity of the technology, materiality of any given element, and the nature of the infringing device.

In *Larry Golden v. Google LLC*; CAFC Case No. 22-1267; the Federal Circuit stated, "It [claim chart] attempts [] to map claim limitations to infringing product features [i.e., Google Pixel 5 smartphone features], and it does so in a relatively straightforward manner."

"Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner … [W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart.…"

*Figure 1*

| Google Pixel 5 Smartphone | Apple iPhone 12 Smartphone | Samsung Galaxy S21 Smartphone | LG V60 ThinQ 5G | Asus / Qualcomm Smartphone for Snapdragon Insiders |
|---|---|---|---|---|
|  |  |  |  |  |
| **Chipset:** Qualcomm Snapdragon 765G **CPU:** Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver) **OS:** Google Android 11, upgradable to Android 13. **Modem:** Snapdragon® X52 5G Modem-RF System. | **Chipset:** Apple A14 Bionic (5 nm). **CPU:** Hexa-core (2x3.1 GHz Firestorm + 4x1.8 GHz Icestorm). **OS:** iOS 14.1, upgradable to iOS 16.1 **Modem:** Qualcomm's Snapdragon X55 5G modem | **Chipset:** Qualcomm SM8350 Snapdragon 888 5G (5 nm). **CPU:** Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz Cortex-A78 & 4x1.80 GHz Cortex-A55) - USA/China. **OS:** Google Android 11, upgradable to Android 13 **Modem:** Snapdragon® X60 5G Modem-RF System. | **Chipset:** Qualcomm SM8250 Snapdragon 865 5G (7 nm+). **CPU:** Octa-core (1x2.84 GHz Cortex-A77 & 3x2.42 GHz Cortex-A77 & 4x1.80 GHz Cortex-A55). **OS:** Google Android 10, upgradable to Android 13 **Modem:** Qualcomm's Snapdragon X55 5G modem | **Chipset:** Qualcomm SM8350 Snapdragon 888 5G (5 nm) **CPU:** Octa-core (1x2.84 GHz Cortex-X1 & 3x2.42 GHz Cortex-A78 & 4x1.80 GHz Cortex-A55). **OS:** Google Android 11. **Modem:** Snapdragon® X60 5G Modem-RF System. |
| Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. | Temperature sensors located within; the sensors monitor the battery and processor's temperature. In extreme temperatures (hot or cold), these sensors shut down the device to prevent damage | Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. | Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. | Ambient Temperature sensor supported by the Android platform. Measures the ambient room temperature in degrees Celsius (°C). Monitoring air temperatures. |

| | | | | |
|---|---|---|---|---|
| Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). | Accelerometer (gravity sensor) supported by the iOS platform. Accelerometer/ Motion sensor: This sensor helps the screen automatically switch from landscape to portrait modes and back again based on whether you're holding the phone vertically or horizontally. | Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). | Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). | Gravity sensor supported by the Android platform. Measures the force of gravity in m/s2 that is applied to a device on all three physical axes (x, y, z). Motion detection (shake, tilt, etc.). |
| Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6-inch flexible OLED display at 432 ppi | Adjusts the screen brightness for current light conditions using the built-in ambient light sensor. Screen: 6.1" Super Retina XDR (OLED). Lock the screen orientation so that it doesn't change when the iPhone is rotated. | Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6.2 inches flexible OLED display at 421 ppi | Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6.8 inches, 109.8 cm2 OLED display at 395 ppi density | Light sensor supported by the Android platform. Measures the ambient light level (illumination) in lx. Controlling screen brightness. Screen: 6.78 inches, 109.5 cm$^2$ OLED display at 395 ppi density |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 5 802.11 a/b/g/n/ac/6, dual-band, hotspot. Bluetooth 5.0. NFC, GPS, GLONASS, Galileo, QZSS Nano-SIM; eSIM or Dual SIM | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct, DLNA. Bluetooth 5.1, A2DP, LE, aptX HD. NFC, GPS, GPS, GLONASS, Galileo, BDS. Single SIM (Nano-SIM) or Hybrid Dual SIM (Nano-SIM, dual stand-by) | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/ 6e, dual-band, Wi-Fi Dir. Bluetooth 5.2, A2DP, LE, aptX HD, aptX Adaptive. NFC, GPS, GLONASS, BDS, Galileo, QZSS, Dual SIM (Nano-SIM, dual stand-by) |

| | | | | |
|---|---|---|---|---|
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 5 802.11 a/b/g/n/ac/6, dual-band, hotspot. Bluetooth 5.0. NFC, GPS, GLONASS, Galileo, QZSS Nano-SIM; eSIM or Dual SIM | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct, DLNA. Bluetooth 5.1, A2DP, LE, aptX HD. NFC, GPS, GPS, GLONASS, Galileo, BDS. Single SIM (Nano-SIM | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6e, dual-band, Wi-Fi Dir. Bluetooth: 5.2, A2DP, LE, aptX HD, aptX Adaptive. NFC, GPS, GLONASS, BDS, Galileo, QZSS, Dual SIM (Nano-SIM, dual stand-by) |
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 5 802.11 a/b/g/n/ac/6, dual-band, hotspot. Bluetooth 5.0. NFC, GPS, GLONASS, Galileo, QZSS Nano-SIM; eSIM or Dual SIM | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct, DLNA. Bluetooth 5.1, A2DP, LE, aptX HD. NFC, GPS, GPS, GLONASS, Galileo, BDS. Single SIM (Nano-SIM | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6e, dual-band, Wi-Fi Dir. Bluetooth: 5.2, A2DP, LE, aptX HD, aptX Adaptive. NFC, GPS, GLONASS, BDS, Galileo, QZSS, Dual SIM (Nano-SIM, dual stand-by) |
| Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. | Apple's iOS operating system features a lock mechanism to secure your phone. After multiple failed attempts to unlock the phone, the phone locks and is disabled (made unavailable).<br><br>Apple Home Key digital security code is stored in Apple Wallet app. It is based on NFC technology. 2 modes of operation: Express Mode: Bring an iPhone or Apple Watch to the lock. Face ID or Passcode. Must use Face ID / Touch ID or enter a passcode. | Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. | Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. | Google's Android operating system features a lock mechanism to secure your phone, known as pattern lock. To set, drag your finger along lines on the screen. To unlock the phone, replicate the pattern drawn. If you fail to solve the pattern too many times, the phone locks and cannot be unlocked without logging into the associated Google account.<br><br>Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone. |

| | | | | |
|---|---|---|---|---|
| Pixel phones use USB-C with USB 2.0 power adapters and cables. To charge your phone with a USB-A power adapter, use a USB-C to USB-A cable. | USB-A to Lightning cable or the newer USB-C to Lightning cable with your iPhone. The MagSafe Battery Pack makes on-the-go, wireless charging easy and reliable—just attach it to your iPhone | Samsung USB-C Cable lets you charge your USB-C device as well as sync your data to your smartphone | UrbanX USB-C to USB 3.1 Adapter, USB-C Male to USB-A Female, Uses USB OTG Technology, Compatible with LG V60 ThinQ 5G | ASUS / Qualcomm Smartphone for Snapdragon Insiders Dual Port 32GB USB Type C Memory Stick; 32GB USB Type-C flash drive; Features USB Type-C connector and a traditional USB connector. |
| BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). | Apple's iOS operating system allows for Face ID authentication with the iPhone 12. The phone also features a lock mechanism to secure your phone. After multiple failed attempts to unlock the phone, the phone locks and is disabled (made unavailable).<br><br>Apple Home Key digital security code is stored in Apple Wallet app. It is based on NFC technology. 2 modes of operation: Express Mode: Bring an iPhone or Apple Watch to the lock. Face ID or Passcode. Must use Face ID, Touch ID, or enter a passcode. | BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). | BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). | BIOMETRICS: Biometric factors allow for secure authentication on the Android platform. The Android framework includes face and fingerprint biometric authentication. Android can be customized to support other forms of biometric authentication (such as Iris). |

| | | | | |
|---|---|---|---|---|
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | *iOS Team Awareness Kit*, iTAK (built on the iOS 14.1, or later, operating system) provides an interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies, whether that is a wearable smartwatch that measures a warfighter's vitals (e.g., heart rate) or a device mounted on a drone to detect chemical warfare agents. |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *iOS Team Awareness Kit*, iTAK (built on the iOS 14.1, or later, operating system) is a digital application available to warfighters throughout the DHS / DoD. iTAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, iTAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. |

| | | | | |
|---|---|---|---|---|
| Connectivity: Wi-Fi 5 (a/b/g/n/ac) 2.4 + 5.0 GHz, Bluetooth 5.0 + LE, NFC, GPS (GLONASS, Galileo, BeiDou), eSIM capable | Connectivity: Wi-Fi 5 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0. NFC, GPS, GLONASS, Galileo, QZSS Nano-SIM; eSIM or Dual SIM | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct. Bluetooth 5.0, A2DP, LE. NFC, GPS, GLONASS, BDS, GALILEO. Nano-SIM and eSIM or Dual SIM | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/6, dual-band, Wi-Fi Direct, DLNA. Bluetooth 5.1, A2DP, LE, aptX HD. NFC, GPS, GPS, GLONASS, Galileo, BDS. Single SIM (Nano-SIM | Connectivity: Wi-Fi 802.11 a/b/g/n/ac/ 6e, dual-band, Wi-Fi Dir. Bluetooth: 5.2, A2DP, LE, aptX HD, aptX Adaptive. NFC, GPS, GLONASS, BDS, Galileo, QZSS, Dual SIM (Nano-SIM, dual stand-by) |
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Apple Home Key digital security code is stored in Apple Wallet app. It is based on NFC technology. 2 modes of operation: Express Mode: Bring an iPhone or Apple Watch to the lock. Face ID or Passcode. Must use Face ID / Touch ID, or enter a passcode.<br><br>*iOS Team Awareness Kit*, iTAK (built on the iOS 14.1, or later, operating system) provides an interface for viewing and controlling different CBRN-sensing technologies | Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies |

| | | | | |
|---|---|---|---|---|
| Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Apple Home Key digital security code is stored in Apple Wallet app. It is based on NFC technology. 2 modes of operation: Express Mode: Bring an iPhone or Apple Watch to the lock. Face ID or Passcode. Must use Face ID-Touch ID or enter a passcode.<br><br>*iOS Team Awareness Kit*, iTAK (built on the iOS 14.1, or later, operating system) provides an interface for viewing and controlling different CBRN-sensing technologies | Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies | Google Nest × Yale Lock is connected to the Nest app; you can lock or unlock your door from your phone.<br><br>*Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing technologies |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *iOS Team Awareness Kit*, iTAK (built on the iOS 14.1, or later, operating system) is a digital application available to warfighters throughout the DHS / DoD. iTAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, iTAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. |

| | | | | |
|---|---|---|---|---|
| *Android Team Awareness Kit,* ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *iOS Team Awareness Kit,* iTAK (built on the iOS 14.1, or later, operating system) is a digital application available to warfighters throughout the DHS / DoD. iTAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, iTAK includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit,* ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit,* ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. | *Android Team Awareness Kit,* ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) plug-ins. |

*Figure 1*

## Qualcomm's "use" of Plaintiff's Patented Central Processing Units (CPUs)

"[T]he CMDC Products (i.e., Google, Apple, Samsung, LG, and Asus/Qualcomm smartphones) , which are "computers" (i.e., cell phones, computer tablets, and laptops), include components of a memory, a display, and a *processor*" … "[w]hen in use, the "Snapdragon chipset" pre-loaded onto the CMDC Products uses a *processor*" … "[t]he "Snapdragon chipset" feature displays [] information through the *processor* using data stored in the device's memory" … "[t]he Snapdragon readers guide lays out in a step-by-step process how to correctly remotely log in to the *processor*" … *See Carolyn Hafeman v. LG Electronics Inc.*

In the above claim chart, the Google, Samsung, LG, and Asus/Qualcomm smartphones have Qualcomm Snapdragon Chipsets; have Octa-core CPUs (*processors*); have Google Android Operating Systems; have Qualcomm Snapdragon Modems; have Google "Find My Device" pre-installed *See Carolyn Hafeman v. LG Electronics Inc.*; have Google Android Team Awareness Kits; have Megapixel cameras for CBR sensing; have cameras for captioning nanopores; Biosensors for CBRNE detection; and, Plug-Ins for CBRN detection.

*Figure 2* is a comparative chart of the "megapixel" smartphone cameras used for detecting Chem/Bio agents. For each different way used, it qualifies as an alternative to the ATAK.

| Google Pixel 5 Smartphone | Apple iPhone 12 Smartphone | Samsung Galaxy S21 Smartphone | LG V60 ThinQ 5G | Asus / Qualcomm Smartphone for Snapdragon Insiders |
|---|---|---|---|---|
| *Google Pixel 5: Dual - 12.2 MP (megapixel), OIS 16 MP (megapixel)* Camera lens in cell phone with microfluidic lens functions as camera; uses microscope to focus on a chemical sensor. A *megapixel* camera captures the image from the array of nanopores uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the *pixel* resolution phone camera. *Megapixel* resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: https://www.understanding nano.com/cell-phone-sensors-toxins.html | *Apple iPhone 12: Dual - 12 MP (megapixel), OIS 12 MP (megapixel)* Camera lens in cell phone with microfluidic lens functions as camera; uses microscope to focus on a chemical sensor. A *megapixel* camera captures the image from the array of nanopores uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the *pixel* resolution phone camera. *Megapixel* resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: https://www.understanding nano.com/cell-phone-sensors-toxins.html | *Samsung Galaxy S21: Triple - 12 MP (megapixel), OIS 64 MP (megapixel)* Camera lens in cell phone with microfluidic lens functions as camera; uses microscope to focus on a chemical sensor. A *megapixel* camera captures the image from the array of nanopores uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the *pixel* resolution phone camera. *Megapixel* resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: https://www.understanding nano.com/cell-phone-sensors-toxins.html | *LG V60 ThinQ 5G: Dual - 64 MP (megapixel), OIS 13 MP (megapixel)* Camera lens in cell phone with microfluidic lens functions as camera; uses microscope to focus on a chemical sensor. A *megapixel* camera captures the image from the array of nanopores uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the *pixel* resolution phone camera. *Megapixel* resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: https://www.understanding nano.com/cell-phone-sensors-toxins.html | *Asus / Qualcomm: Triple - 64 MP (megapixel) OIS; 8 MP, 12MP (mega)* Camera lens in cell phone with microfluidic lens functions as camera; uses microscope to focus on a chemical sensor. A *megapixel* camera captures the image from the array of nanopores uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the *pixel* resolution phone camera. *Megapixel* resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time.* Source: https://www.understanding nano.com/cell-phone-sensors-toxins.html |

*Figure 2*

***Figure 3*** is a visual display of different ways the smartphone camera [1][2] can be used for detecting Chem/Bio agents. For each different way used, it qualifies as an alternative to the ATAK.



***Figure 3***

---

**1**    The camera captures the image from the array of nanopores that uses fluid rather than bulky moving parts. The sensors contained in one array is determined by the resolution phone camera. The resolution in cell phone cameras; probe a million different spots on the sensor simultaneously. *Tiny sensors tucked into cell phones could map airborne toxins in real time*. Source: https:// www.understanding nano.com/cell-phone-sensors-toxins.html

**2**    Hyperspectral imaging scans for light frequencies that humans can't see in order to identify the unique chemical signatures of different substances. They say their device, which can be mass produced, is compatible with all standard smartphone cameras. *These New Smartphone Cameras Could Tell You What an Object Is Made of* https://www.sciencealert.com/new-smartphone-cameras-could-tell-you-what-an-object-is-made-of

*Figure 4* describes how at least nine (9) standard sensors for the Google, Apple, Samsung, LG, and Asus/Qualcomm smartphones can be used as "biosensors". For each different way used, it qualifies as an alternative to ATAK.



**Figure 4**

The Smartphones Biosensors:

1. Ambient light sensor: Cancer biomarkers; Toxic metals; Pathogens
2. Capillary inlet: (Air analysis). Airborne Pathogens; Aerosols
3. Capillary inlet: (Fluid analysis). Blood analysis; Biomarkers
4. Microfluidic cassette: Interchangeable cassettes with varying assays
5. VIS-NIR spectrometer: Food freshness; Melanoma
6. NNAP Electrodes: Toxic metals and Organic pollutants in water
7. Optical Waveguide: Pathogens in water and food
8. Back and front camera: Colorimetric analysis; Image analysis
9. Microphone: Voice recording stress levels

*Figure 5* list some of the same standard sensors illustrated in Figure 4. The port on the smartphones is used for the CBRN *plug-ins* included in ATAK.



*Figure 5*

ATAK is a digital application available to warfighters throughout the DoD. Built on the Android operating system, ATAK offers warfighters geospatial mapping for situational awareness during combat — on an end-user device such as a smartphone or a tablet. With DTRA's contribution, ATAK now includes chemical, biological, radiological, and nuclear (CBRN) *plug-ins*.

Just having a plug-in is not all that's involved. There has to be an app specific software to sync the chemical, biological, radiological, and nuclear sensors to the smartphone plus the Google Android Operating System.

Sincerely,

Date: _April 28, 2023_

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net




FSC
MIX
FSC® C118818

PAPER POUCH
How2Recycle.info

PRESS FIRMLY TO SEAL



UNITED STATES
POSTAL SERVICE®

RDC 07

20439

U.S. POSTAGE PAID
PME 2-Day
GREENVILLE, SC
29616
APR 29 23
AMOUNT
**$28.75**
R2304M112676-



**UNITED STATES POSTAL SERVICE**®

**PRIORITY MAIL EXPRESS**®

EI 436 402 143 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE 864 288-5605

LARRY GOLDEN
740 WOODRUFF RD.
#1102
GREENVILLE, SC 29607

**DELIVERY OPTIONS (Customer Use Only)**

☐ SIGNATURE REQUIRED *Note:* The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**

☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE 202 275-8000

U.S. COURT OF APPEALS FOR THE
FEDERAL CIRCUIT
CASE No: 23-1818
717 MADISON PLACE, NW
WASHINGTON, DC

ZIP + 4® (U.S. ADDRESSES ONLY)

2 0 4 3 9 -

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.   Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day   ☒ 2-Day   ☐ Military   ☐ DPO

PO ZIP Code: 29615
Scheduled Delivery Date (MM/DD/YY): 05/01/2023
Postage: $ 28.75

Date Accepted (MM/DD/YY): 04/29/23
Scheduled Delivery Time: ☐ 6:00 PM
Insurance Fee: $
COD Fee: $

Time Accepted: 10.19   ☒ AM ☐ PM
Return Receipt Fee: $
Live Animal Transportation Fee: $

Special Handling/Fragile: $
Sunday/Holiday Premium Fee: $
Total Postage & Fees: 28.75

Weight: 1 lbs. 13 ozs.   ☒ Flat Rate
Acceptance Employee Initials: JB
$

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY)   Time   ☐ AM ☐ PM   Employee Signature
Delivery Attempt (MM/DD/YY)   Time   ☐ AM ☐ PM   Employee Signature

LABEL 11-B, MAY 2021   PSN 7690-02-000-9996

← PEEL FROM THIS CORNER