No: 2023-1818

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

LARRY GOLDEN

*Plaintiff-Appellant*

v.

QUALCOMM INCORPORATED

*Defendant-Appellee*

RECEIVED

AUG 3 0 2023

United States Court of Appeals
For the Federal Circuit

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN 4:22-cv-03283-HSG

JUDGE HAYWOOD S. GILLIAM, JR.

PLAINTIFF-APPELLANT'S STATEMENT IN
LIEU OF ORAL ARGUMENT

LARRY GOLDEN, Pro Se
740 Woodruff Rd., #1102
Greenville, S.C. 29607
(864-288-5605)
Atpg-tech@charter.net

August 25, 2023

# THE TRIAL COURT DEPRIVED PLAINTIFF OF PROPERTY WITHOUT DUE PROCESS OF LAW

The Trial Court is the Government and the "Due Process" Clause of the Fifth Amendment of the United States Constitution says to the federal government that no one shall be "deprived of life, liberty or property without due process of law."

The Trial Court knew, or should have known, that in the case of *Golden v. United States* 13-307C (2013-2021), the case the Trial Court relied on to dismiss Plaintiff's case for *res judicata*; that Qualcomm was named in the case as the "primary" third-party contractor responsible for the development of three (3) of the alleged infringing components covered in Plaintiff's patents [the new and improved upon cell phone, the CPU, the CBRN sensors]; that Qualcomm failed to appear after being issued a timely "notice to appear" in 2019 to protect its interest; that Qualcomm was excluded from the case by the Government, the DOJ and the CFC; that Plaintiff's claims of infringement against Qualcomm, who was performing work for the Government and shielded from patent infringement liability, was never compelled by the CFC to appear to protect its interest after Qualcomm fail to appear; was dropped from the case by the Government, the DOJ and the CFC; knowing that without the inclusion of the CBRN sensors and CPUs that Qualcomm developed under the *Cell-All* initiative could never be considered "manufactured" and "suitable for use" according to the Federal Circuit in *FastShip, LLC v. U.S.*, "[W]e interpret "manufactured" in § 1498 [] such that a product is "manufactured" when it is made to include each limitation of the thing invented and is therefore "suitable for use"; that Qualcomm's alleged actions was *never* adjudicated and a decision on Qualcomm's actions was *never* entered; whereby, the only thing that resulted from the case is the Government deprived Plaintiff of his property without "due process of law". The Trial was complicit in the "lie" that Golden's case against Qualcomm's alleged infringement has already been decided.

# THE TRIAL COURT'S "DELIBERATE ACTION TO AVOID LEARNING' OF POTENTIAL INFRINGEMENT"

On November 4, 2010, Plaintiff emailed Kate Lane, Strategic IP, Qualcomm Incorporated (E-mail: clane@qualcomm.com); Direct: (858-658-2047)), to inform Ms. Lane of certain patented technology (i.e., CMDC—Smartphone—device; central processing unit (CPU)), and asked if Qualcomm would be interested in entering into a licensing agreement.

December 7, 2010, Plaintiff mailed letters addressed to the attention of Qualcomm's Chairman & CEO Dr. Paul E. Jacobs and Qualcomm's EVP & President Derek Aberle, informing the Executives of the Patent Owner's (Plaintiff) patented technology and asked if they would be interested in entering into a licensing agreement. (Copies available)

After 10 months, Ms. Lane responded back via e-mail on September 29, 2011 with, "Hi Larry, I'm just checking in to see if this portfolio is still available for purchase. Please let me know. Thank you, Kate". On October 5, 2011, Ms. Lane responded via e-mail, "Thanks Larry, [c]an you please take a few moments to fill out the attached Patent Information Request form for this? Please let me know if you have any questions. Best regards, Kate" (copy available).

On October 11, 2011, the Patent Owner (Plaintiff) returned via e-mail, the answered Patent Information Request form to Ms. Lane. The Patent Owner made several attempts to contact Ms. Lane via e-mail and by phone after that, but never heard back from Ms. Lane.

On October 5, 2022, U.S. Magistrate Judge Roy S. Payne of the Eastern District of Texas "holding that requisite knowledge of the asserted patent and alleged infringement of that patent could be satisfied by notice of the lawsuit". The Federal Circuit court emphasized the actual standard that *"willfulness requires a jury to find no more than deliberate or intentional infringement."* Quoting *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367 (Fed. Cir. 2020)

**The Trial Court is Complicit with Qualcomm's Willful Blindness**

Plaintiff alleged in the Trial Court that the coping and selling of Qualcomm's products [Qualcomm's Smartphone for Snapdragon Insiders and Qualcomm's Snapdragon Chipset-CPU's] that are covered in Plaintiff's patents, with actual knowledge of Plaintiff's patent(s), and intent to do so, satisfy the knowledge requirement for willful infringement. In *Ansell Healthcare Prod. LLC v. Reckitt Benckiser LLC,* No. 15-CV-915-RGA, 2018 WL 620968 (D. Del. Jan. 30, 2018), "The court noted that, if a defendant was willfully blind to a patent covering a product that it copied and then sold, it "could satisfy the knowledge requirement for willful infringement, because the defendant's willful blindness demonstrates the same level of culpability as if the defendant copied the product with actual knowledge of the patent."

# THE TRIAL COURT FAIL TO UNDERSTAND THERE'S NO LAW THAT ALLOWS QUALCOMM TO COLLECT ROYALTIES ON PLAINTIFF'S PATENTED INVENTIONS WITHOUT AUTHORIZATION OR LEGAL RIGHT TO DO SO

The United States District Court Northern District of California; *Federal Trade Commission v. Qualcomm Incorporated*, "Findings of Fact and Conclusions of Law" Case 5:17-cv-00220-LHK; Document 1490 Filed 05/21/19; Presiding United States District Judge Lucy H. Koh has concluded Qualcomm is being unjustly enriched from its anticompetitive practices: "Specifically, Qualcomm charges a 5% running royalty on handset sales ... Qualcomm's 5% royalty rate on the price of each phone sold is a species of unfair competition.

Judge Lucy Koh issued her decision in *FTC v Qualcomm*. The facts that were key in the Judge's analysis included the following: "Qualcomm employed a business model where it sold chips to handset makers ... [u]nder the SULA, the handset makers pay royalties of 5% on the price of each phone sold.

Qualcomm openly admits its violation, and does not deny collecting royalties on the price of each handset sold (i.e., Plaintiff's patented CMDC smartphones): "Qualcomm 5G NR Royalty Terms Statement: "Qualcomm will continue to offer licenses for OEM branded mobile handsets that include both Qualcomm's cellular standard essential patents as well as those patents not essential to the standard, a total portfolio of over 130,000 patents and pending applications worldwide at royalty rates of 4% of the selling price for branded single-mode handsets [smartphones] and 5% of the selling price for branded multi-mode handsets [smartphones]." https://www.qualcomm. com/content/dam/qcomm-martech/dm-assets/documents/qualcomm-5g-nr-royalty-terms-statement.pdf

It is now over twelve (12) years since Plaintiff notified Qualcomm of his patents covering the handsets and chipset-CPUs Qualcomm is collecting royalties on without owning a patent; without obtaining authorization to do so; and without any other legal right to do so.

It is a lie to say the Ninth Circuit decided Qualcomm was well within its legal rights to collect royalties on smartphones and CPUs for the smartphones covered in Plaintiff's patents, without owning a patent; without authorization; and, without any other legal right to do so.

The Trial Court ignored Plaintiff's independent patent claims 1-9 of the '189 patent; claims 13-23 of the '439 patent; and claims 4-6 of the '287 patent, for the smartphone. Which means the Trial Court created a loophole for Qualcomm to illegally collect royalties and literally sent the message that it legal to collect royalties on the patented inventions of others, so long as the Inventor is African American (Black). This has never happened to a White Inventor.

The Trial Court ignored Plaintiff's independent patent claims 1 & 11; and dependent claims 2-10 & 12-20 of the '619 patent, for the smartphones' central processing units. Which means the Trial Court created a loophole for Qualcomm to illegally "tie" Plaintiff's patented

5

CPUs to its wireless cellular modems in a chipset or system on a chip, to collect royalties and exactly sent the message that it legal to "tie" patented products to collect royalties on the patented inventions of others, so long as the Inventor is African American (Black).

The Trial Court decision is complicit with the previous case decisions that has protected Qualcomm from having to defend allegations of infringement and antitrust law violations, where Plaintiff has filed complaints against Qualcomm in the past; that Golden is not worthy of citizenship rights and therefore cannot sue a White in federal court over property.

## THE TRIAL COURT IGNORED PLAINTIFF'S "TYING ARRANGEMENT" CLAIM AGAINST QUALCOMM

**The Court writes**: "The Complaint alleges that "[u]pon information and belief, Plaintiff believes Qualcomm has formed or created its monopoly for chipsets by 'tying' Plaintiff's CPUs to its wireless cellular modems ... without recognizing that the case was reversed and vacated by the Ninth Circuit. See id. ¶¶ 76-78; cf. *FTC v. Qualcomm Inc.*, 969 F.3d 974, 1001- 1002 (9th Cir. 2020)".

**Qualcomm admits**: "Qualcomm itself has admitted that Plaintiffs' claims differed from those at issue in the FTC's case including an explicit allegation regarding "tying". *See* Qualcomm Opening Br., *FTC v. Qualcomm Inc.*, Case No. 19-16122, ECF No. 80, at 41 (9th Cir.) (acknowledging that the FTC "never made" a "tying" claim). In remanding this case to the district court to decide the effect of *FTC v. Qualcomm* in the first instance, the panel agreed with Plaintiffs that the merits of Plaintiffs' case were not at issue in the limited 23(f) appeal." U.S. District Court—NDC—San Francisco Division; In Re: Qualcomm Antitrust Litigation [Joint Case Management Statement] Case 3:17-md-02773-JSC Dkt. 881 Filed 04/14/22 Page 6 of 19.

Sincerely,

*[signature: Larry Golden]*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

7

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 25th day of August, 2023, a true and correct copy of the foregoing "Plaintiff-Appellant's Statement in Lieu of Oral Argument", was served upon the following Defendant by priority "express" mail:

John Allen Yates

Kyrie Cameron

PATTERSON + SHERIDAN LLP

24 Greenway Plaza, Suite 1600

Houston, TX 77046

Tel: 713-623-4844

jyates@pattersonsheridan.com

kcameron@pattersonsheridan.com

*Larry Golden*

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605

# USPS Priority Mail Express Label

**CUSTOMER USE ONLY**

**FROM:** (PLEASE PRINT) PHONE (864) 288-5605

LARRY GOLDEN
740 WOODRUFF RD,
#1102
GREENVILLE, SC 29607

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**

☒ **SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
- ☐ No Saturday Delivery (delivered next business day)
- ☐ Sunday/Holiday Delivery Required (additional fee, where available*)
- ☐ 10:30 AM Delivery Required (additional fee, where available*)
  *Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT) PHONE 202-275-8000

U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT
CASE NO: 23-1818
717 MADISON PLACE, NW
WASHINGTON, DC

ZIP + 4® (U.S. ADDRESSES ONLY): 20439-____

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 insurance included.

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.

---

EL 624216127 US

**UNITED STATES POSTAL SERVICE® | PRIORITY ★ MAIL ★ EXPRESS™**

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day  ☒ 2-Day  ☐ Military  ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| 29615 | 8-28-23 | $ 28.75 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
|---|---|---|---|
| 8-26-23 | ☐ 10:30 AM ☐ 3:00 PM ☐ 12 NOON | $ | $ |

| Time Accepted | 10:30 AM Delivery Fee | Return Receipt Fee | Live Animal Transportation Fee |
|---|---|---|---|
| 1:27 ☐ AM ☒ PM | $ | $ | $ |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
|---|---|---|
| $ | $ 28.75 | |

| Weight | ☐ Flat Rate | Acceptance Employee Initials |
|---|---|---|
| 3 lbs. W ozs. | | 8m |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

LABEL 11-B, OCTOBER 2016  PSN 7690-02-000-9996  **1-ORIGIN POST OFFICE COPY**

Court